IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

REBECCA S. L.,

                    Plaintiff,

         v.                                Civil Action No.
                                           5:21-CV-1212 (TJM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP               CAEDEN SEHESTED, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          HUGH DUN RAPPAPORT, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the

relevant times and, accordingly, is ineligible for the supplemental security

income ("SSI") benefits for which she has applied.  The matter has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend a finding that the

Commissioner's determination resulted from the application of proper legal

principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in February of 1984, and is currently thirty-eight

years of age.  She was thirty-five years old on November 19, 2019, the

date she filed her application for benefits.  Plaintiff measures five feet and

one inch in height, and weighed approximately two hundred and twenty

pounds during the relevant period.  Plaintiff currently lives in a mobile home

in Marathon, New York, with her boyfriend, her four minor sons, five dogs,

and four cats.

Plaintiff reports having dropped out of school after completing the

eighth grade, and failing to achieve a GED.  She has no significant work

history, other than having worked as an associate at a retail store for a

period of a few weeks in 2006. Plaintiff left that job because she could not handle the "day-to-day activity" that job required, and also due to issues with child care.

Plaintiff alleges that she suffers from chronic low back pain, lymphedema that causes swelling in her legs, and bipolar disorder that causes both depression, manic periods, and anxiety. As is relevant to her application, plaintiff has treated for her impairments with sources at Family Counseling Services and Family Health Network of Central New York.

Plaintiff alleges that her mental impairments affect her ability to focus and be around crowds of people. She reports that her boyfriend usually goes with her if she leaves the house because she experiences a great deal of stress in public. Her boyfriend takes her shopping because she does not have a driver's license, but she is generally able to take care of her children and pets, homeschool her children because of the COVID-19 pandemic, and do housework such as laundry and simple cooking, although she requires help from her boyfriend and children with tasks when she is experiencing a depressive period. When she suffers from depressive episodes, plaintiff is very emotional, cries easily, and

sometimes experiences suicidal ideation or intent.[1]

In terms of physical impairments, plaintiff testified that she experiences back pain, and that her lymphedema causes her legs to swell. She also has had carpal tunnel syndrome, although that condition no longer bothers her following surgery performed in 2015.

II.   PROCEDURAL HISTORY

A.   Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on November 19, 2019.  After a hearing, administrative law judge ("ALJ") Kenneth Theurer issued a decision on January 11, 2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on September 2, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.   The ALJ's Decision

In his decision, ALJ Theurer applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period.  The ALJ

---

[1]   According to plaintiff's medical records, she has attempted suicide twice, most recently in 2016.

next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including lumbar spine degenerative disc disease, obesity, depression, anxiety, and posttraumatic stress disorder ("PTSD").  As part of his step two finding, ALJ Theurer also found that plaintiff's carpal tunnel syndrome and lymphedema are not severe impairments.

At step three, ALJ Theurer examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.04, 12.04, 12.06, and 12.15.

ALJ Theurer next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work, as defined by the controlling regulations, with the following exceptions:

> she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can sit for up to six hours and stand or walk for approximately six hours in an eight-hour workday with normal breaks. She can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. She can perform occasional balancing, stooping, kneeling, crouching, and crawling. She can understand and follow simple

instructions and directions, perform simple tasks with or without supervision, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact appropriately with others (coworkers, supervisors, and the public) to the extent necessary to carry out simple tasks. She can perform work that is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions with few, if any, workplace changes.

ALJ Theurer went on at step four and concluded that plaintiff has no past relevant work.  Proceeding to step five, the ALJ elicited testimony from a vocational expert and, relying on that testimony, concluded that plaintiff remains able to perform available work in the national economy, citing the representative positions of marker, housekeeper cleaner, and routine clerk. Based upon these findings, ALJ Theurer determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on November 8, 2021.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ failed to properly evaluate the opinion from consultative examiner Dr. Corey Anne

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Grassl and erred in relying instead on the prior administrative medical

findings from the state agency medical consultants.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on

December 1, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.   Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to

9

suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

Plaintiff's sole argument in this case is that the ALJ erred when assessing the three medical opinions in the record.[3]  Specifically, plaintiff argues that the ALJ (1) failed to properly support his rejection of portions of the opinion from consultative examiner Dr. Corey Anne Grassl with an adequate assessment of the factors required by the applicable regulations, and (2) erred in instead relying on the opinions from the two state agency psychiatric consultants by again failing to adequately assess the required factors.  Dkt. No. 11, at 11-17.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence.  Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL

---

[3]     The record also contains three employability assessments from plaintiff's therapist, LMSW Melissa A. Bromwell, each reflecting the therapist's opinion that plaintiff is temporarily unable to work.  Administrative Transcript ("AT") at 434-36.  ALJ Theurer properly discounted those forms as failing to assess plaintiff's functional limitations.  AT 20.

168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

     1.    <u>Dr. Corey Anne Grassl</u>

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

On January 23, 2020, after conducting a mental examination, Dr. Grassl opined that plaintiff showed no evidence of limitation in her abilities to understand, remember and apply simple directions and instructions; understand, remember and apply complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers and the public; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions. AT 335.[6] She opined further that plaintiff is markedly limited in her ability to sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; and regulate emotions, control behavior, and maintain well-being. *Id.* During her examination, Dr. Grassl observed, among other things, that plaintiff had normal motor behavior and eye contact, fluent speech with adequate language, coherent and goal directed thoughts, a flat affect, and a neutral mood. AT 354. Dr. Grassl observed that plaintiff's memory was intact, her attention and concentration were mildly impaired specifically due to her apparently poor math skills, and that her intellectual functioning appeared to be below average. AT 354-55. Dr. Grassl further noted that plaintiff

---

[6]     The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT__."

reported being able to complete all skills of daily living and enjoying watching television and listening to music, although she rarely socializes and is not close with family.  AT 355.

The ALJ found Dr. Grassl's opinion to be less persuasive in that "[i]t was rendered after only a one-time examination, and the opined 'marked' limitations are not supported by the objective evidence of record and the claimant's high level of daily activities, discussed above."  AT 20.  Plaintiff argues that this assessment is inadequate because (1) it does not address the required supportability factor, (2) the ALJ failed to explain what specific evidence he considered to be inconsistent with that opinion, and (3) his reliance on the purportedly "high level" of daily activities was erroneous. Dkt. No. 11, at 12-15.

I acknowledge that the ALJ does not specifically mention the factor of supportability in his assessment of Dr. Grassl's opinion.  However, when discussing the mental health evidence generally, the ALJ does detail the various findings documented by Dr. Grassl, which indicates that he clearly considered those when formulating his various conclusions.  AT 19.  The Second Circuit has recently indicated that, although the failure to explicitly consider supportability or consistency is procedural error, a court may affirm the findings despite that procedural error "if 'a searching review of

the record assures us that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *2 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alteration in original).  Further, although plaintiff argues that Dr. Grassl's opinion is indeed supported by her findings in an effort to establish that the error is harmful, that argument strains credulity.  Plaintiff offers no persuasive rationale, beyond her conclusory statement, as to how any reasonable ALJ could find notations of mildly impaired concentration and attention due to poor math skills, a flat affect, estimated below average intellectual functioning, and fair insight and judgment would of necessity translate to marked restrictions in the abilities to sustain concentration, perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being.  AT 355.

Even if the ALJ erred in failing to assess whether the totality of Dr. Grassl's report, including the subjective symptoms reported by plaintiff, would support her opinion, the ALJ did explicitly consider the other most relevant factor, which is whether the opinion is consistent with the other evidence in the record, and that factor clearly supports the ALJ's overall persuasiveness finding.  Plaintiff argues that the ALJ erred by failing to cite

or discuss the specific evidence he found to support his consistency finding, herself citing diagnoses, documented symptoms reports, and a few notations of anxious or irritable affect, depressed mood, fatigue, and fair insight and judgment.  Dkt. No. 11, at 13-14.  However, this argument represents little more than an inappropriate request to reweigh the evidence in a way that is more favorable to plaintiff.  *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at \*9 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.) (noting that, when assessing whether substantial evidence supports the ALJ's findings, the court "will not reweigh the evidence presented at the administrative hearing"); *accord Shyla D. v. Kijakazi*, 20-CV-1295, 2022 WL 798158, at \*3 (N.D.N.Y. Mar. 16, 2022) (Stewart, M.J.).

In a previous portion of his decision, the ALJ discussed various aspects of plaintiff's mental health treatment record, including her reports of symptoms, history of weekly counseling and medication management, and remote history of suicide attempts, as well as the results of various documented mental status examinations that revealed some depressed or anxious mood but otherwise generally normal findings, and her reports that her medications are "somewhat helpful" for her depression symptoms.  AT 18-19.  It is therefore not accurate to say that the ALJ did not indicate what

evidence he was relying upon when determining whether or not Dr. Grassl's opinion of marked limitations is consistent with the record evidence.

Nor is the ALJ's discussion of the record misrepresentative or otherwise erroneous.  In a report dated March 14, 2019, it was noted that plaintiff reported symptoms such as lack of motivation, easy irritation, and isolation, for which she was prescribed Pristiq, as well as a pattern of two or three weeks of feeling depressed followed by two or three weeks of feeling "alright" with symptoms worsening in the last three years.  AT 312.  She was observed as having an engaging, motivated and pleasant attitude with appropriate motor behavior, a euthymic but depressed mood, perseverative and circumstantial thought process, good intellectual functioning and concentration, good or fair attention and judgment, and fair insight.  AT 312-13.

On November 12, 2019, plaintiff reported that she had been taking Pristiq for her depression for four years and that it was somewhat helpful, although she still experienced moodiness with periods of low mood lasting two or three weeks.  AT 326.  She was observed to be anxious, with appropriate motor behavior and a depressed and anxious mood, and noted to exhibit a coherent and logical thought process, good intellectual

functioning and concentration, and fair insight and judgment. AT 327-28. A treatment plan update, dated January 12, 2020, indicates that plaintiff continued to be symptomatic with depression, although she reported feeling less depressed than previously reported, was able to identify a few coping skills, and could readily identify situations that trigger her depressive symptoms. AT 371-72.

At some point in early 2020, plaintiff was prescribed Rexalti for her mental health symptoms. AT 401. On April 28, 2020, it was noted that the pharmacy had given her the incorrect dose of Rexalti, and she requested that it be increased back to the correct dose because that had been more effective at controlling her irritability. AT 461. Plaintiff denied experiencing depression, reported that she was adjusted to homeschooling her children, was pleased to be in a new house with more room, had been trying to get outside more and was enjoying riding a bicycle, was sleeping well at night, and had been socializing with her neighbor which had been helpful for her. AT 461. She was noted to have a euthymic but irritable affect, a mildly circumstantial thought process, average intellect, good concentration and attention, good judgment, and fair insight. AT 462. This evidence, particularly plaintiff's response to medication as evidenced in April of 2020, is inconsistent with Dr. Grassl's finding of marked limitations in

concentration and pace, sustaining an ordinary routine and regular

attendance at work, and regulating her emotions, controlling her behavior,

and maintaining well-being.

I note, moreover, that the ALJ did not err in pointing to plaintiff's

reported daily activities as further evidence that Dr. Grassl's opinion is

inconsistent with the record, nor did he misconstrue the evidence related to

those activities.  The ALJ acknowledged that plaintiff reported that being in

public affects her ability to focus, that she becomes emotional and cries if

people yell at her, that she cannot leave the house without her boyfriend,

and that she sometimes has low mood and does not shower or clean.  AT

18.  However, the ALJ further noted that plaintiff reported to Dr. Grassl that

she can perform all activities of daily living, she reported to a treatment

provider that she had been socializing with her neighbor, she lives with her

four minor children and cares for them without any particular assistance,

has no problems with personal care, can do laundry and cleaning, and

goes outside at least once daily to put her children on the bus.  AT 19.

Plaintiff argues that the ALJ failed to consider reports of further

limitations related to completing the above activities, but that argument is

unpersuasive, as plaintiff fails to show that the activities considered by the

ALJ are not representative of her general level of functioning.  Indeed,

although plaintiff reported getting help from her boyfriend to do chores, care for her children, or to drive her to the store, she also testified that he is at work much of the time and she is alone with her children and responsible for everything during that time.  AT 39-40, 43.

Moreover, although plaintiff reported different levels of functioning on "good days" and "bad days," there is little indication as to how often plaintiff has bad days.  In her June 2020 function report to the agency, plaintiff reported taking care of four children, three dogs, and five cats, although she indicated her boyfriend helps her care for all of those when she has bad days.  AT 237, 239.  She reported she does not shower or cook on bad days, but, again, there is no indication that her bad days occur frequently, particularly as the most recent mental health treatment note from April of 2020 documented that plaintiff denied depressive symptoms and was doing well on her medications other than some irritability resulting from a mistakenly lowered dose of Rixalti.  AT 461.

Based on the evidence as a whole, I find that there was nothing erroneous in the ALJ's interpretation of the reported activities as being inconsistent with the marked limitations Dr. Grassl opined.  I further find that, even if the ALJ did not clearly assess the factor of supportability, plaintiff has not shown that a more explicitly discussion of that factor would

have reasonably changed the outcome in this case, much less that no reasonable ALJ could conclude that Dr. Grassl's opinion is inconsistent with the record as a whole.  I agree that, in a perfect world, the ALJ would have addressed the relevant factors and the evidence in a more comprehensive manner.  However, the reality is that ALJs are burdened with heavy caseloads that unfortunately often prevent them from providing decisions in every case that express their findings with perfect clarity, and those decisions very often have findings that rely on discussions of evidence made in a different portion of the decision.  Where, as here, a searching review of the record assures me that the ALJ's assessment of the evidence does not traverse the substance of the relevant regulations regarding the consideration of opinion evidence, a procedural failure to explicitly address one or both of the relevant factors does not require remand.  I therefore reject plaintiff's arguments that the ALJ committed any error requiring remand in finding Dr. Grassl's opinion to be less persuasive.

### 2.      Dr. K. Lieber-Diaz and Dr. H. Ferrin

In rendering prior administrative findings in connection with the initial determination on plaintiff's application for disability benefits, Dr. K. Lieber-Diaz opined on February 7, 2020, that plaintiff is capable of performing unskilled work on a sustained basis.  AT 63-64.  In the determination at the

reconsideration level, on July 14, 2020, Dr. H. Ferrin opined that plaintiff

can understand and remember instructions and is able to maintain

adequate attention to complete ordinary work tasks on an ongoing basis,

sustain a routine, relate and respond to others in an appropriate manner,

and deal with changes in an ordinary work setting despite some trouble

coping with stress.  AT 78.  In rendering his prior administrative finding, Dr.

Ferrin specifically found that Dr. Grassl's opinion "is an overestimate of the

severity of the individual's restrictions/limitations."  AT 79.  The ALJ found

that the opinions of Dr. Lieber-Diaz and Dr. Ferrin are generally persuasive,

"as they were rendered after thorough reviews of the sum of the evidence

by physicians with extensive program and professional expertise and

because they are consistent with the record as a whole."  AT 20.

Plaintiff first argues that the ALJ's choice to find these opinions

persuasive is inconsistent with his rationale for finding Dr. Grassl's opinion

to be less persuasive, in that the ALJ discounted Dr. Grassl's opinion for

being based on a single examination while ignoring the fact that Dr. Lieber-

Diaz and Dr. Ferrin did not examine plaintiff at all.  Dkt. No. 11, at 15-16.

This rationale is not inconsistent, however, because, as plaintiff herself

acknowledges, the ALJ proceeded to note that the opinions of Dr. Lieber-

Diaz and Dr. Ferrin were instead based on a thorough review of the record

evidence.  AT 20.  Because Dr. Grassl seemingly did not consider any evidence beyond the subjective reports provided by plaintiff at that time of her own one-time examination, the ALJ did not err in finding that the state agency sources' review of substantial amounts of the treatment records and other evidence provided them with a superior knowledge of plaintiff's overall condition, even if they did not personally examine her.  *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J.) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State Agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *see* 20 C.F.R. § 416.920c(c)(5) (noting that one of the "other" factors to consider is whether "a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").

Plaintiff next argues that the ALJ failed to explain exactly how those two opinions were based on a thorough review of the record and consistent with the evidence, seemingly implying that the ALJ was required to discuss the specific evidence with which those opinions are consistent and that the failure to do so prevents meaningful review of the ALJ's finding.  Dkt. No. 11, at 16.  As was already discussed above, even though the ALJ did not

cite specific evidence in the paragraph in which he addressed the state

agency sources' opinions, he did discuss the mental health evidence in a

different portion of the decision, and that same discussion provides insight

into what evidence the ALJ relied on.  Plaintiff has not argued how that

evidence is insufficient to support the ALJ's finding of consistency.

Moreover, to the extent that plaintiff appears to question the ALJ's finding

that the state agency sources did not conduct a thorough review of the

record, I note that those opinions were rendered in February and July 2020,

and they documented which evidence was before them and what they

relied on when making their determinations.  Further, to the extent that

some evidence was submitted after they rendered their determinations,

plaintiff does not point to any evidence that would indicate a significant

worsening or exacerbation of plaintiff's symptoms that would render the

state agency source opinions stale or no longer reliable.

Plaintiff last argues that the ALJ erred in failing to consider that Dr.

Lieber-Diaz and Dr. Ferrin both reviewed, relied upon, and rendered

opinions consistent with the opinion of Dr. Grassl.  Dkt. No. 11, at 16-17.

This argument is flawed for a number of reasons.  First, it relies upon the

various findings that the state agency sources made in the worksheet

portions of their determinations to the effect that plaintiff has "moderate"

limitations in certain enumerated areas of functioning.  However, the worksheet is merely designed to assist the state agency source in formulating his or her opinion, and does not itself necessarily constitute the source's opinion.  *See* AT 61-62 (noting that the worksheet questions "help determine the individual's ability to perform sustained work activities," but that "the actual mental residual functional capacity assessment is recorded in the narrative discussion" in Section III of the form) (quoting Programs Operations Manual ("POMS") DI 25020.10).  Further, the applicable agency guidance makes clear that a "moderate" limitation on this worksheet covers a broad range of possible levels of limitation and does not inherently indicate actual functional limitations that would need to be accounted for in the source's opinion.  POMS DI 24510.063 (specifying that the worksheet is part of the Section I of the form and that the choice of "moderately limited" when completing that form is merely a non-specific indication that "the individual's capacity to perform the activity is impaired").  Most importantly, although Dr. Lieber-Diaz and Dr. Ferrin noted "moderate" limitations in various areas in which Dr. Grassl also opined limitations, that fact alone does not make the state agency opinions consistent with the opinion of Dr. Grassl, who assessed *marked* restrictions.  Indeed, notwithstanding indicating "moderate" on certain areas in the worksheet,

both state agency sources provided functional opinions which contain limitations that contradict Dr. Grassl's opinion.  I note, moreover, that Dr. Ferrin explicitly indicated that he found Dr. Grassl's opinion to be an overestimation of plaintiff's restrictions and specifically noted that it was not consistent with his own opinion.  AT 79.  Dr. Grassl's opinion is therefore not consistent with the state agency sources' opinions, nor did those sources purport to adopt Dr. Grassl's opinion when rendering their own.

Because the ALJ's finding that the opinions of Dr. Lieber-Diaz and Dr. Ferrin are persuasive for being based on a thorough review of the record and consistent with the record evidence is supported by substantial evidence and not based on any legal error, I find no grounds for remand in that respect.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 15) be

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      December 7, 2022
            Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge